No. 35,460

FRANCES JAMES, *Appellee*, v. THE METROPOLITAN LIFE INSURANCE COMPANY, *Appellant*.

(131 P. 2d 915)

Opinion on rehearing filed December 12, 1942. (For original opinion see 155 Kan. 377, 125 P. 2d 369.)

*Thomas M. Van Cleave*, of Kansas City, argued the cause, and *Edwin S. McAnany, Willard L. Phillips, Bernhard W. Alden, Patrick B. McAnany* and *Thomas M. Van Cleave, Jr.*, all of Kansas City, were on the briefs for the appellant.

*J. O. Emerson*, of Kansas City, argued the cause, and *Fred Robertson, Edward M. Boddington* and *C. O. Littick*, all of Kansas City, were on the briefs for the appellee.

OPINION ON REHEARING

The opinion of the court was delivered by

ALLEN, J.: The motion of defendant for a rehearing in this case was granted. (For original opinion see *James v. Metropolitan Life Ins. Co.*, 155 Kan. 377, 125 P. 2d 369.) Supplemental briefs have been filed and the case has been reargued.

The abstract recites: "At the close of the opening statements, the plaintiff moved for judgment on the pleadings and opening statements." The motion was sustained.

Pertinent portions of defendant's answer are set forth in the original opinion. We quote part of defendant's opening statement:

"The policy contained a provision that when an employee's employment is terminated, his insurance ceases on the next pay day after the termination of employment. James's employment terminated Tuesday and his insurance ceased on the following Friday.

"The policy also provided that if an employee is laid off his insurance continues unless the employer sends a notice to the contrary to the insurance company. After October 20, 1931, Armour and Company did send a notice to the Metropolitan Life Insurance Company informing it that Frank James's employment had terminated and the insurance was canceled.

"Frank James went to work at Armour's in 1922 or 1923, and in 1927 was transferred to the beef bagging department. He was a good employee and worked regularly, and from 1927 to October 20, 1931, was never laid off.

"Armour and Company has certain rules governing the procedure of an employee quitting his job. He must inform his foreman, who instructs his clerk to prepare a release card. On the release card is written the reason for the man's leaving. This card is given to the employee. He first takes it to the employment office for approval and then presents it to the paymaster, where he receives his wages.

"On October 20, 1931, James told his foreman, Mr. Dragistine, that he desired to quit. A release card was prepared and given to James, who took it to the employment office and then to the paymaster.

"Another regulation of Armour and Company is that when a man quits he loses his service record; that is, his seniority, vacation rights, insurance, etc., and should he later return, he starts in as a new employee.

"A short time after James quit he went to the employment office at Armour and Company and was hired again. However, he was not returned to the beef bagging department, but was sent to the hog kill. Thereafter, he worked off and on intermittently until the time he was killed on the railroad right of way near the Phillips Petroleum Company.

"After James quit on October 20, 1931, Armour and Company sent a notice to the Metropolitan Life Insurance Company instructing that the insurance of Frank James be canceled as of October 20, 1931, because of termination of employment, and thereafter no premiums were paid.

"After James quit on October 20, 1931, at no time had he worked continuously for Armour's for a period of six months until the day of his death, March 4, 1932."

In the original opinion it was stated: "In paragraph 6 of defendant's answer, it was alleged: 'Defendant states that said Frank James left the employ of Armour and Company on the 20th day of October, 1931. . . .' This clause seems to be the only direct allegation which attempts to state any change in the relationship between the employer and employee on the date mentioned." (p. 382.)

Upon a careful reëxamination of the answer and opening statements, we think the construction placed on the pleading is too strict

and severe. The code (G. S. 1935, 60-736) provides that in the construction of any pleading, for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties. Thus the literal exactitude of expression called for in the original opinion goes beyond the spirit of the code and the liberal rule usually applied by this court. Did the answer sufficiently allege the termination of the employment of Frank James on October 20, 1931? In paragraph 7 of the answer it was stated that "Frank James was afterwards and on November 3, 1931, again employed by Armour and Company," and in paragraph 8 it was alleged the insurance was discontinued "by reason of the termination of the employment of Frank James with Armour and Company on October 20, 1931." In the opening statement of counsel for defendant it was stated that James "worked regularly from 1927 to October 20, 1931"; "On October 20, 1931, James told his foreman that he desired to quit"; "After James quit on October 20, 1931, Armour and Company sent a notice. . . ," and "After James quit on October 20, 1931, at no time had he worked continuously. . . ."

In plaintiff's petition it was alleged that James entered the employment of Armour and Company "sometime in 1922 and continued in its employment up until about March 4, 1932, when the said Frank James was killed."

Manifestly defendant's answer was drawn to controvert this allegation of the petition, and raised an issue of fact as to whether the employment of James was terminated on October 20, 1931.

In the opening statement by counsel for plaintiff it was stated:

"I understand, now, there is a contention that some of these stoppages in his work which we claim were mere lay-offs, they claim were either a discharge or that he quit Armour and Company. I think there is a contention here in the pleadings that this man quit or left Armour's October 20, 1931. That was the October before he died in March. But they admit he was right back working for Armour's November 3d—a couple of weeks afterward."

We must conclude the answer raised an issue of fact and that plaintiff was properly informed of the defense as to the termination of the policy.

For the reasons stated our former opinion is vacated, the judgment reversed and the cause remanded for further proceedings in accordance with this opinion.

HARVEY and SMITH, JJ., dissent.